# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

SURGICORE OF JERSEY CITY,

                     Plaintiff,                 **MEMORANDUM & ORDER**
                                               19-CV-3485(EK)(RML)

            -against-

EMPIRE HEALTHCHOICE ASSURANCE,
INC.,

                     Defendant.

------------------------------------x

ERIC KOMITEE, United States District Judge:

         Plaintiff Surgicore of Jersey City ("Surgicore") is an
ambulatory surgery center based in New Jersey.  In 2018,
Surgicore performed certain medical services for its patient,
G.S.  Surgicore brings this action to recover money billed for
those services.

         Surgicore's complaint alleges that G.S. was covered
under a health benefits plan issued by defendant Anthem Life &
Disability Insurance Company ("Anthem"), but an affiliated
insurance company — Empire HealthChoice Assurance, Inc.
("Empire") — appeared in this action and said that it, not
Anthem, actually administered G.S.'s health-benefits plan.  *See*
Defendant's Opening Brief at 1, 5-6, ECF No. 16-1 ("Def. Br.").
The parties now agree that Empire is the proper defendant here,

and the Court grants Surgicore's request to substitute Empire as the defendant.[1]

The Complaint alleges that the Defendant insurer violated New York state law by refusing to reimburse the full amount that Surgicore billed for services rendered to G.S. Surgicore asserts claims for breach of contract, promissory estoppel, and equitable estoppel, and also alleges that Defendant violated New York Insurance Law § 3224-a (the "Prompt Pay Law").

Presently before the Court is Empire's motion to dismiss. Empire argues, first, that Plaintiff lacks standing to assert any claim that is based on G.S.'s purported assignment to Surgicore of her right to reimbursement, because the insurance policy at issue expressly precludes such assignment. Empire also moves to dismiss all causes of action for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court finds that Surgicore has standing to pursue its claims. Nevertheless, for

---

[1] Surgicore requested permission to substitute Empire as defendant for Anthem. Plaintiff's Opposition Brief at 3-4, ECF No. 21 ("Pl. Br."). Empire consents to that request, *see* Transcript of Oral Argument dated February 11, 2021 at 12:17-13:5, ECF No. 25, and the Court now grants it. Under Fed. R. Civ. P. 15(a)(2), after responsive pleadings have been filed, amendments to the complaint are permitted with the consent of the opposing party or leave of the court. *E.g.*, *Belton v. City of New York*, No. 12-CV-6346, 2014 WL 4798919, at *3 (S.D.N.Y. Sept. 26, 2014), *aff'd*, 629 F. App'x 50 (2d Cir. 2015) (granting leave to amend caption on court's own initiative). Accordingly, the Court directs the Clerk of the Court to amend the caption to reflect this substitution.

the reasons set forth below, I dismiss all causes of action for
failure to state a claim.

## I.    Factual Background

The following facts are alleged in the Complaint
(unless otherwise noted) and are accepted as true for purposes
of this motion.  Surgicore rendered certain surgical services to
G.S. between October 19, 2018 and November 2, 2018.  Complaint
¶¶ 13, 17, 33, ECF No. 1 ("Compl.").  G.S.'s insurance plan was
called the "Empire Hospital Only PPO Plan for City of New York"
(the "Plan").  *See* Declaration of Frances Shultz ¶ 9, ECF No.
16-2 (referencing the Plan at 64, ECF No. 16-3).  Surgicore is
outside of Empire's network, meaning that it does not have an
established contract with Empire for reimbursement at a
predetermined and/or negotiated rate.

As noted above, each of the Complaint's allegations
was made against Anthem — an affiliate of Empire.[2]  For example,
Plaintiff alleges that its employees "confirmed with Anthem"
that "it had indeed issued the Plan" under which G.S. was
covered.  Compl. ¶ 10.  Surgicore alleges that Anthem's
employees further confirmed that G.S. "was eligible under the

---

[2] As discussed further below, Surgicore was offered, but declined, the
previously assigned judge's invitation to amend its complaint.  *See*
Transcript of Oral Argument dated February 11, 2021 at 4:6-20; *see also*
Minute Entry for proceedings held before Judge Frederic Block on 12/6/2019
("The plaintiff declined to file an amended complaint and will proceed with
the complaint filed.").

[P]lan for out-of-network medical benefits; that the services
[Surgicore] was going to render were covered under the Plan, and
[that] the Plan provided for payment to an 'out-of-network'
medical provider." *Id.*

Plaintiff does not divulge, however, the names of any
Anthem (or Empire) employee who made these statements, the
precise content of these alleged communications, or the date(s)
on which they occurred. And beyond the confusion about which
company Surgicore's personnel spoke to, the Complaint reads as
bare-bones and perfunctory in several key respects — including
with respect to how much Surgicore was to be reimbursed.
Surgicore claims that the person or persons to whom it spoke
"promised to pay" Surgicore the "maximum allowed rate" for the
services at issue.[3] *Id.* ¶ 11. But the Complaint does not claim
that there was any discussion about how this maximum rate would
be calculated.

Instead, the Complaint elides this "maximum allowed
rate" concept and a different, statutory reimbursement rate
called the "usual, customary and reasonable [or UCR]" rate. *See
id.* ¶ 11. Surgicore alleges that it — Surgicore — "uses the . .

---

[3] Although Surgicore does not specify an exact amount that was to be
paid, it does allege that the maximum allowed rate is "at least equal to the
80th percentile of charges for the particular health care service performed
by a provider in the same or similar specialty and provided in the same
geographical area as the requested service as reported in a benchmarking
database maintained by a nonprofit organization specified by the
Superintendent of Financial Services." Compl. ¶ 20.

. [UCR] rate to determine the fee for the service rendered."
*Id.* ¶ 12.  Though Surgicore does not claim to have described
this practice to Anthem / Empire, Surgicore goes on to allege
that that no one at Anthem / Empire *denied* that the UCR rate (or
a percentage thereof) would be an appropriate reimbursement
rate.  *See id.* ¶¶ 10-12 (alleging that no one Surgicore's
employee(s) spoke to "indicated there were any pre-conditions to
receive payment of 80th percent[ile]" of the UCR rate for those
services).

Following this conversation, Surgicore rendered
medical services to G.S. and submitted a claim for reimbursement
to Defendant, indicating the services performed (allegedly
pursuant to Defendant's instructions).  *Id.* ¶¶ 13-14.  On the
claim form, Surgicore checked "Yes" in response to the question:
"Accept Assignment?"  *Id.* ¶ 15.  Plaintiff alleges that
Defendant "knew or should have known that answering 'Yes' to
'Accept Assignment' means [Surgicore] agreed to accept 80th of
the UCR for the service rendered . . . ."  *Id.* ¶ 16.

Nonetheless, the Complaint alleges, Defendant
disbursed only $2,230.20 to Surgicore — far less than the "80th
percent of the UCR" rate that Surgicore billed.  *Id.* ¶ 18.
Surgicore claims that, as a result, it has been damaged in the
amount of $175,369.41 (the alleged "reasonable value of the
services") but no less than $97,973.80 (the "80th percent of the

UCR rate" minus the \$2,230.20 already paid to Surgicore) — plus interest under the Prompt Pay Law. *Id.* ¶¶ 18 et seq.  Surgicore alleges that Empire continues to withhold this difference, in what Surgicore asserts to be a violation of the Prompt Pay Law because more than forty-five days have elapsed since Surgicore filed its claim for reimbursement.  N.Y. Ins. Law § 3224-a(a) (insurers must respond to a claim for services transmitted via electronic means within thirty days, and by other means within forty-five days).  Surgicore claims that Empire has withheld this payment because Empire "incorrectly calculated the 80th percentile of charges" for the treatment provided.  *Id.* ¶ 21. However, there is no indication in the Complaint that Empire's payment calculation was actually calibrated by reference to the UCR rate in any way.  Finally, Surgicore alleges that Defendant never provided notice of any good-faith dispute regarding the coverage, or that Surgicore failed to follow Defendant's directions for filing such claims.  *Id.* ¶¶ 19, 22, 23.

## II.  Discussion

Defendant moves to dismiss the Complaint for lack of standing and failure to state a claim.

### A.   Motion to Dismiss for Lack of Standing

Defendant contends that — as a threshold matter — Surgicore lacks standing to pursue its claims.  Def. Br. at 6-7. The crux of this contention is that the Plan's anti-assignment

provision deprives all out-of-network providers, including
Surgicore, of standing to pursue any of its claims.  *Id.*  The
provision in question states, in relevant part:

> You [G.S.] cannot assign any benefits under the plan
> to any person, corporation, or other organization.
> You cannot assign any monies due under the plan to any
> person, corporation or other organization unless it is
> an assignment to Your Physician for a surprise bill .
> . . .  Any assignment by You other than for monies due
> for a surprise bill will be void.

Plan at 64.[4]

In support of this contention, Defendant cites
several ERISA cases in which courts ruled that providers
attempting to enforce an assignment in contravention of an
explicit anti-assignment clause lack standing to pursue their
claims.  *See* Def. Br. at 6-7 (citing, *inter alia*,
*Neurological Surgery, P.C. v. Travelers Co.*, 243 F. Supp. 3d
318, 326-29 (E.D.N.Y. 2017) (assignment from plan beneficiary
to out-of-network medical service provider was invalid, where

---

[4] The Court may consider the Plan, even though Plaintiff did not attach
it to the Complaint.  Courts may consider documents referenced in or
"integral" to a complaint.  *See, e.g., Chambers v. Time Warner, Inc.*, 282
F.3d 147, 153 (2d Cir. 2002); *see also Plumbers & Pipefitters Nat'l Pension
Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 607-08 (S.D.N.Y. 2015).
Here, the Plan is integral to the Complaint, as it is referenced repeatedly
and indeed forms a substantial basis of many of Plaintiffs' claims.  *See,
e.g.*, Compl. ¶ 10 ("Prior to rendering any service [Surgicore] confirmed with
[Anthem] employees that it had indeed issued the Plan," "that [G.S.] was
covered under the terms of the Plan, that [G.S.] was eligible under the
[P]lan for out-of-network medical benefits; that the services [Surgicore] was
going to render were covered under the Plan, and [that] the Plan provided for
payment to an 'out-of-network' medical provider."); *id.* ¶ 13 (Surgicore
"rendered medical treatments on [G.S.] that are reimbursable and covered
under the product/[P]lan").  It is therefore properly considered on a motion
to dismiss.

plan prohibited assignment); *Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 351 (S.D.N.Y. 2013) (same)).

Surgicore responds that it is bringing the instant claims not as G.S.'s assignee, but in its own right.  Pl. Br. at 5-7.  Its claims, according to Surgicore, arise from the oral representations made to Surgicore directly by Defendant's employees.  *Id.* at 6.  Plaintiff asserts that those communications established an agreement (or actionable promise) in their own right.

The Complaint does appear to show Plaintiff vacillating, at times, between the position that its standing derives from an assignment, on the one hand, and from Plaintiff's direct contractual (or quasi-contractual) arrangements with Defendant, on the other.  For example, the Complaint relies on Surgicore's having checked the "Accept Assignment" box on the claim form; this would seem to indicate that Surgicore's contract claim is somehow grounded in an assignment of G.S.'s rights.  In addition, it relies on G.S.'s having "authorized" payment directly to Surgicore.  Compl. ¶ 9. New York law provides that assignments made in contravention of an anti-assignment clause are void if the clause "contains clear, definite and appropriate language declaring the invalidity of such assignments."  *Sullivan v. Int'l Fid. Ins.*

8

*Co.*, 96 A.D.2d 555, 556 (2d Dep't 1983). That is the case here. Thus, Plaintiff cannot proceed with its claims *to the extent* it is relying on an assignment of rights from G.S.[5]

Assignment is not, however, the sole basis of Plaintiff's claim to standing. Plaintiff also invokes its own direct dealings with Defendant to establish that it has standing, and these allegations are sufficient to overcome the standing objection. Surgicore alleges, for example, that Defendant's "employees promised to pay [Surgicore] the maximum allowed rate for the services [Surgicore] intended to render to [G.S.]." Compl. ¶ 11. Surgicore also alleges that it "confirmed" that "the services [Surgicore] was going to render were covered under the Plan, and the Plan provided for payment to an 'out-of-network' medical provider." *Id.* ¶ 10; *see also id.* ¶ 14 ("Pursuant to instructions provided by defendant, [Surgicore] submitted a proof of claim indicating each service it rendered."). Accordingly, Plaintiff has standing to pursue its claims based on the communications alleged in the Complaint.

---

[5] Surgicore concedes as much in its response to Defendant's motion to dismiss, notwithstanding its oblique invocation of the "Accept Assignment" question on the proof of claim. *See, e.g.*, Pl. Br. at 5 ("The Complaint makes obvious Surgicore's claims do not arise from any assignment-of-benefits . . . . Therefore, the Court's analysis turns on whether or not Surgicore has standing in its own right to pursue claims against defendant.").

**B.    Motion to Dismiss for Failure to State a Claim**

On a motion to dismiss under Rule 12(b)(6), all

factual allegations in the complaint are accepted as true, and

all reasonable inferences are drawn in favor of the plaintiff.

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir.

2007).  The Court's function is "not to weigh the evidence that

might be presented at a trial but merely to determine whether

the complaint itself is legally sufficient."  *Goldman v. Belden*,

754 F.2d 1059, 1067 (2d Cir. 1985).  As such, courts should not

dismiss a complaint if the plaintiff has adequately alleged

"enough facts to state a claim to relief that is plausible on

its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).

"A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  While courts construe all factual allegations in the

light most favorable to the plaintiff, "the tenet that a court

must accept as true all of the allegations contained in the

complaint is inapplicable to legal conclusions."  *Id*.  Courts do

"not permit conclusory statements to substitute for minimally

sufficient factual allegations."  *Furlong v. Long Island Coll.*

*Hosp.*, 710 F.2d 922, 927 (2d Cir. 1983); *see also Smith v. Local*

*819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)
(stating that "conclusory allegations or legal conclusions
masquerading as factual conclusions will not suffice to prevent
a motion to dismiss.").

1. <u>Breach of Implied Contract</u>

Plaintiff alleges that by withholding payment,
Defendant breached an "implied contract."  Compl. ¶¶ 31-35.
This contract, according to Surgicore, arose from its
conversation(s) with Defendant's employees.  *E.g.*, Compl. ¶ 11
(alleging that Defendant's "employees promised to pay
[Surgicore] the maximum allowed rate for the services
[Surgicore] intended to render" to G.S.); *see also id.* ¶ 34
(alleging that Defendant "accepted and benefited from" the
medical treatment because Defendant did not have to pay "a
medical benefit that it was otherwise contractually obligated to
pay").  Plaintiff alleges that the terms of this contract were
implied because Empire never "dispute[d]" or disconfirmed them
after it received Surgicore's claims, nor did it "provide any
notice that [Surgicore] did not follow its directions for
submission of a claim."  *Id.* ¶¶ 22, 23.

To establish the existence of a contract under New
York law, a plaintiff must "establish an offer, acceptance of
the offer, consideration, mutual assent, and an intent to be
bound."  *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121 (1st Dep't

2009).  Implied contracts may arise from the conduct of the parties, in combination with (or in lieu of) their spoken or written words.  *E.g.*, *Watts v. Columbia Artists Mgmt. Inc.*, 188 A.D.2d 799, 801 (3d Dep't 1992); *Parsa v. State of New York*, 64 N.Y.2d 143, 147-49 (1984).  Courts may draw inferences from the parties' conduct to ascertain whether a binding agreement exists.  *See Jemzura v. Jemzura*, 36 N.Y.2d 496, 503-04 (1975).

Implied contracts, however, still require "mutual assent evincing the intention of the parties to be bound by specific contractual terms."  *Russo v. Banc of Am. Sec., LLC*, No. 5-CV-2922, 2007 WL 1946541, at *4 (S.D.N.Y. June 28, 2007).  It is axiomatic that for a binding contract to arise, the material terms being agreed upon must be sufficiently definite.  *E.g.*, *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 939 (2d Cir. 1998) (quoting Williston on Contracts § 4:18, at 414 (4th ed. 1990) ("It is a necessary requirement that an agreement, in order to be binding, must be sufficiently definite to enable the courts to give it an exact meaning.")).  This requirement "assures that the judiciary can give teeth to the parties' mutually agreed terms and conditions when one party seeks to uphold them against the other."  *Express Indus. & Terminal Corp. v. N.Y.S. Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999); *see also Candid Prods., Inc. v. Int'l Skating Union*, 530 F. Supp. 1330, 1333-34 (S.D.N.Y. 1982) (where alleged

contract's terms are "vague" or "indefinite," the court must conclude that "there is no enforceable contract"); Restatement (Second) of Contracts § 33(2) (1981) ("The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.").

Here, Surgicore has failed to plausibly plead the formation of a contract. Most significantly, it has not plausibly alleged a meeting of the minds on price (arguably the most important term of the purported agreement). In addition, the Complaint does not contain the type of "factual content" concerning the formation of the alleged agreement that is required to render its allegations plausible under *Iqbal*. 556 U.S. at 678.

"Price or compensation are material terms in a contract requiring definiteness." *Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*, 385 F. Supp. 2d 256, 271 (S.D.N.Y. 2005). Here, Surgicore claims that Defendant's employee(s) promised to pay the "maximum allowed rate," but that term is not defined anywhere — not in New York law, G.S.'s benefits plan, nor in the course of the conversation(s) alleged — at least as far as the Complaint delineates. The Complaint sets forth that the maximum allowed rate is "at least equal" to the "80th percentile of charges for the particular health care

13

service." Compl. ¶ 20. But Surgicore does not say — in either the Complaint or its response to Defendant's motion to dismiss — why the term should be understood this way. While it is true that when a particular term has a well-developed, customary and specific meaning in a given industry, a contract using that term should be understood to invoke that customary meaning, *e.g.*, *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 87 n.4 (2d Cir. 2002), here Plaintiff has not invoked any such custom or pleaded facts sufficient for its application. *See, e.g.*, *Cella v. MobiChord, Inc.*, No. 17-CV-527, 2020 WL 4430509, at *6 (D. Utah July 31, 2020) (requiring industry standards to be affirmatively articulated).

Surgicore also contends that because it checked the "Accept Assignment" box, the Defendant "knew or should have known" it would *accept* "80th of the UCR." Compl. ¶ 16. But the Complaint leaves us to guess how or why the Defendant would have made that intellectual leap; the most Surgicore can muster is that Empire never "dispute[d]" the (unspoken) idea that "80th of the UCR" was appropriate. *Id.* ¶¶ 19, 22, 23. It remains unclear why Defendant should be expected to dispute a point that was never raised explicitly, at least insofar as the Complaint alleges. Thus, Plaintiff's threadbare allegation that Defendant breached a contract by failing to pay the UCR rate for the medical procedures, "without any concomitant allegation that the

14

Plan obligated Defendant[] to pay for out-of-network medical services in accordance with the [given] rate, is fatal to [its contractual] claim for unpaid benefits." *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-CV-4600, 2018 WL 1420496, at *10 (D.N.J. Mar. 22, 2018).

Moreover, Surgicore does not plead sufficient "factual content" to establish a meeting of the minds between it and Empire. For starters, as indicated above, Plaintiff does not identify which person or persons made the statements on which it allegedly relied. Indeed, as Plaintiff's counsel conceded at oral argument, Plaintiff cannot even allege with clarity *which company* these employees worked at, let alone to which particular person(s) it spoke. *See* Transcript of Oral Argument dated February 11, 2021 at 17:10-21:23. Nor does Surgicore set forth any facts as to when those statements were made or the context of the conversation(s). Accordingly, this claim must be dismissed.

2. <u>Promissory Estoppel</u>

Surgicore also brings a claim for promissory estoppel. This claim, too, is predicated on the allegation that Defendant "clearly and unambiguously" promised to pay Surgicore the "maximum allowed rate" for the contemplated services to G.S. Compl. ¶ 37. Surgicore contends that it relied on Empire's promise in providing services to G.S., and that such reliance

15

was reasonable and foreseeable. *Id.* ¶ 38. Plaintiff alleges "unconscionable" injury for the uncompensated services it performed for the benefit of G.S. *Id.* ¶ 39.

In New York, "the elements of a claim for promissory estoppel are (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise was made; and (3) an injury to the party to whom the promise was made by reason of the reliance." *Roberts v. Karimi*, 204 F. Supp. 2d 523, 527 (E.D.N.Y. 2002) (citing *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995)).

Plaintiff's promissory-estoppel claim falls short on the first prong. Plaintiff has failed to plead factual content sufficient to allege a clear and unambiguous promise, for the same reasons delineated in the breach-of-contract section, above.

Second, Plaintiff has failed plausibly to allege that it reasonably and foreseeably relied on these statements. As an initial matter, the factual basis for Plaintiff's reliance argument has evidently been inadvertently omitted from the Complaint. *See* Compl. ¶ 38 (Plaintiff alleges that it relied on Defendant's promise and that such reliance was both reasonable and foreseeable because Surgicore "had received payment of out-of-network benefits for the same or similar services from." [sic: Surgicore leaves this sentence unfinished]). This Court

16

will not attempt to divine the intended conclusion of this
sentence, given that Plaintiff declined the Court's invitation
to amend the Complaint.[6]

### 3. Equitable Estoppel

Surgicore also brings a claim for equitable estoppel.
This claim is based on the contention that Defendant
misrepresented and/or omitted facts in their conversations, and
thereby induced Surgicore "to believe that defendant agreed to
pay 'out-of-network' benefits to [Surgicore] for medical
treatments rendered to [G.S.]." Compl. ¶ 26. Surgicore
contends that Defendant "knew or should have known" that it
would rely on Defendant's "words, actions, inactions, and other
conduct" in treating G.S. and forbearing from demanding payment
from G.S. for that treatment. *Id.* ¶¶ 27, 28. Defendant is
therefore equitably estopped, Surgicore posits, from "denying
the existence or enforceability" of an agreement to pay the
maximum allowed rate for the treatments Surgicore rendered. *Id.*
¶ 29.

Under New York law, "the elements of equitable
estoppel are, with respect to the party estopped, (1) conduct

---

[6] *See* Pre-Motion Conference Request Pursuant to Rule 2(A) at 1-2, ECF
No. 7; Transcript of Oral Argument dated February 11, 2021 at 4:6-20; *see
also* Minute Entry for proceedings held before Judge Frederic Block on
12/6/2019 ("The plaintiff declined to file an amended complaint and will
proceed with the complaint filed.").

which amounts to a false representation or concealment of
material facts; (2) intention that such conduct will be acted
upon by the other party; and (3) knowledge of the real facts."
*Wallace v. BSD-M Realty, LLC*, 142 A.D.3d 701, 703 (2d Dep't
2016) (internal quotation marks omitted).  And as to itself, the
party asserting estoppel must allege its "(1) lack of knowledge
of the true facts; (2) reliance upon the conduct of the party
estopped; and (3) a prejudicial change in its position."  *Id.*
(internal quotation marks and citations omitted).

The doctrine should be "invoked sparingly and only
under exceptional circumstances."  *Abercrombie v. Andrew Coll.*,
438 F. Supp. 2d 243, 265 (S.D.N.Y. 2006) (internal quotation
marks omitted).  And equitable estoppel claims must meet the
heightened pleading standard of Rule 9(b), which requires causes
of action to be set forth with "particularity."  Fed. R. Civ. P.
9(b); *Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC*, 724 F.
Supp. 2d 407, 419 (S.D.N.Y. 2010).  Rule 9(b) requires that an
equitable-estoppel complaint "(1) specify the statements that
the plaintiff contends were fraudulent, (2) identify the
speaker, (3) state where and when the statements were made, and
(4) explain why the statements were fraudulent."  *Abercrombie*,
438 F. Supp. 2d at 272 (quoting *Rombach v. Chang*, 355 F.3d 164,
170 (2d Cir. 2004)).  In other words, a complaint must make out
the "who, what, when, where, and how: the first paragraph of any

18

newspaper story." *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 520 (S.D.N.Y. 2014) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

Moreover, the doctrine "does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of [the] plaintiff's underlying substantive cause of action." *Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, N.A.*, No. 12-CV-6168, 2014 WL 1259630, at *5 (S.D.N.Y. Mar. 27, 2014) (quoting *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 167 (1st Dep't 2003)). Instead, it applies "when some conduct by a defendant after his initial wrongdoing has prevented the plaintiff from discovering or suing upon the initial wrong." *Smith v. Smith*, 830 F.2d 11, 13 (2d Cir. 1987).

Applying this standard, the equitable estoppel claim must be dismissed. First, Surgicore does not allege any act of misrepresentation by Defendant that is independent of the underlying fraud — namely the employees' purported misrepresentations — or that Surgicore delayed the commencement of this lawsuit in reliance upon such a misrepresentation. Even if Surgicore did so, the Complaint still says virtually nothing about the conversation or conversations in which Defendant (Empire or Anthem) purportedly made the false representations or concealed material facts. As set forth above, all Surgicore can muster is the claim that it had "confirmed with [Defendant's]

employees . . . that the services [Surgicore] was going to render were covered under the Plan, and [that] the Plan provided for payment to an 'out-of-network' medical provider." Compl. ¶ 10. Again, however, this allegation lacks the particularized factual content required by Rule 9(b). *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986).

Because Surgicore's allegations of misrepresentation are insufficient as a matter of law to support an equitable-estoppel claim, this claim is dismissed.

4. Prompt Pay Law

Plaintiff's final claim is that Defendant violated New York's Prompt Pay Law. This law is designed to facilitate the "prompt, fair and equitable" payment of claims for health-care services. Specifically, the Prompt Pay Law requires insurers to pay undisputed claims within thirty days following receipt of an electronic claim submission or within forty-five days after receipt by other means, as long as the claims were themselves timely submitted to the health insurer within 120 days of the date of service. N.Y. Ins. Law § 3224-a(a), (g). If a claim is disputed, the insurer must pay the undisputed portion of the claim, and, within thirty days of receipt of the claim, notify the policyholder, covered person, or health-care provider in writing of the specific reason(s) why the insurer is not obligated to pay the claim. *See id.* § 3224-a(b)(1); *Maimonides*

*Med. Ctr. v. First United Am. Life Ins. Co.*, 116 A.D.3d 207, 209
(2d Dep't 2014). Alternatively, insurers may request additional
information necessary to determine their liability on the claim.
N.Y. Ins. Law § 3224-a(b)(2). If a claims provider violates the
provisions of this law, it must "pay to the health care provider
or person submitting the claim, in full settlement of the claim
or bill for health care services, the amount of the claim or
health care payment plus interest." *Id.* §3224-a(c)(1); *see also*
*Maimonides*, 116 A.D.3d at 215.

Here, Surgicore has failed to plausibly allege that
Defendant has violated the Prompt Pay Law. It does not aver
that it provided Empire (or Anthem) with a *timely* proof of its
claim — indeed, it says nothing at all about the timing of its
request for reimbursement. Nor does Surgicore allege that
Defendant was untimely in its response. All that Plaintiff has
provided is a recitation of the elements of the cause of action,
which does not suffice. *See Twombly*, 550 U.S. at 555. Thus,
the Prompt-Pay claim is also dismissed.

        \*        \*        \*        \*        \*

Finally, it is worth reiterating that Plaintiff was
afforded an opportunity to amend the Complaint during a pre-
motion conference held before Judge Block. There, Plaintiff was
made aware — at the very least — that Anthem was not the correct
defendant and that the Complaint was deficient in several other

21

ways, including that it did not provide sufficient information regarding the alleged promise(s) at the core of Surgicore's claims. *See* Pre-Motion Conference Request Pursuant to Rule 2(A) at 1-2. Nevertheless, Plaintiff declined to amend the Complaint to correct these important deficiencies, and instead chose to move forward with this action in reliance on the same complaint it had initially filed in state court, prior to the removal of this action. *See* Transcript of Oral Argument dated February 11, 2021 at 4:6-20; *see also* Minute Entry for proceedings held before Judge Frederic Block on 12/6/2019 ("The plaintiff declined to file an amended complaint and will proceed with the complaint filed.").

### III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion to dismiss the Complaint in its entirety. The Clerk of Court is respectfully directed to enter judgment and close this case.

The Clerk of Court is also directed to amend the caption of this action to replace "Anthem Life & Disability Insurance Company" with "Empire HealthChoice Assurance, Inc."


SO ORDERED.


                                    /s/ Eric Komitee
                                    ERIC KOMITEE
                                    United States District Judge


Dated:     March 22, 2021
           Brooklyn, New York