UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ANJANI SINHA MEDICAL P.C.,

                Plaintiff,                                 **MEMORANDUM AND ORDER**
                                                                           21-CV-138 (RPK) (TAM)

        -against-

EMPIRE HEALTHCHOICE ASSURANCE,
INC., *d/b/a Empire Blue Cross Blue Shield*,

                Defendant.
-------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

       Plaintiff Anjani Sinha Medical P.C. provided medical services to a patient covered by a health plan administered by defendant Empire HealthChoice Assurance, Inc.  Sinha submitted claims to Empire for $79,252.34 and was reimbursed $1,312.64.  Sinha then filed this lawsuit, alleging that Empire under-reimbursed Sinha in violation of the health plan's terms.  Empire moves to dismiss the operative second amended complaint.  For the reasons explained below, the motion is granted in part and denied in part.

## BACKGROUND

       The following facts, which are taken from the second amended complaint and its exhibits, are assumed to be true for purposes of this order.

       Empire administers the Ornamental Iron Workers Local 580 employee health benefit plan (the "Plan").  Second Am. Compl. ("SAC") ¶¶ 4–5, 42 (Dkt. #31).  Sinha is an out-of-network medical provider, meaning that it does not have an agreement with Empire to receive payments at a negotiated rate.  *See id*. at ¶¶ 64, 89.  J.B. is a Plan member.  *Id*. at ¶ 42.

In April 2019, J.B. was injured in a motorcycle accident. *Id*. at ¶ 6. He complained that his knees were "clicking and giving way," and MRIs revealed that he had torn portions of his meniscus in each knee. *Id*. at ¶ 61.

Sinha performed surgery on J.B.'s knees. *Id*. at ¶¶ 8, 10. Sinha operated on J.B.'s left knee in July 2019, and Sinha operated on J.B.'s right knee the following month. *Ibid*.. Both surgeries were performed by a surgeon and a physician's assistant. *Ibid*.

Sinha received an assignment of J.B.'s right to payment under the Plan, calculated the cost of the surgeries, and submitted claims to Empire. *Id*. at ¶¶ 12–14, 16, 57. As to the left-knee surgery, Sinha charged $40,092 for the surgeon and $4,289.84 for the physician's assistant, for a total of $44,381.84. *Id*. at ¶ 13. As to the right-knee surgery, Sinha charged $31,500 for the surgeon and $3,370.50 for the physician's assistant, for a total of $34,870.50. *Id*. at ¶ 14. Sinha itemized the charges using "CPT codes," which "are universal signifiers published by the American Medical Association to identify component expenses of a service." *Neuroaxis Neurosurgical Assocs., PC v. Cigna Healthcare of N.Y.*, No. 11-CV-8517 (BSJ) (AJP), 2012 WL 4840807, at *1 (S.D.N.Y. Oct. 4, 2012). The bills included charges for both the surgeon and physician's assistant using (1) CPT code 29881, which corresponds to a meniscectomy; (2) CPT code 29876, which represents a synovectomy; and (3) CPT code 29999, which is a miscellaneous code used here to reflect a coblation arthroplasty. SAC ¶¶ 9–10. Empire initially denied the claims, and Sinha appealed. *Id*. at ¶¶ 20, 22.

Empire eventually agreed to partially reimburse the costs of the left-knee surgery but not the right-knee surgery. *Id*. at ¶¶ 24–25, 32. Empire paid $575.48 for the surgeon as to CPT code 29881, and Empire paid $737.16 for the physician's assistant as to CPT code 29999. *Id*. at ¶¶ 24–

25. Empire denied all remaining charges. *Id*. at ¶¶ 23–24, 27–28. It explained its decisions as follows:

- For CPT code 29811 as to the surgeon for the left-knee surgery, Empire stated that it paid "the in-network benefit level" because "the patient did not have the opportunity to select an in-network provider for these services." SAC, Ex. C 25 (Dkt. #31-1); *see* SAC ¶ 26.

- For CPT code 29811 as to the physician's assistant for the left-knee surgery, Empire stated "[w]e do not have sufficient information to determine the clinical appropriateness of the assistant surgeon services reported on this claim and are therefore denying the services." SAC, Ex. C 29; *see* SAC ¶ 38.

- For CPT code 29876 as to the surgeon for the left-knee surgery, Empire stated that "the procedure is not eligible for separate reimbursement when billed with the procedure and diagnosis indicated." SAC, Ex. C 25; *see* SAC ¶ 39.

- For CPT code 29876 as to the physician's assistant for the left-knee surgery, Empire stated "[w]e do not have sufficient information to determine the clinical appropriateness of the assistant surgeon services reported on this claim and are therefore denying the services." SAC, Ex. C 29; *see* SAC ¶ 39.

- For CPT code 29999 as to the surgeon for the left-knee surgery, Empire stated "[w]e are unable to process this claim using the unlisted, cancelled or invalid health service code. Please resubmit a new claim with a more appropriate code or detailed description of the service." SAC, Ex. C 25; *see* SAC ¶ 36.

- For CPT code 29999 as to the physician's assistant for the left-knee surgery, Empire stated that it paid "[t]he allowed amount for this procedure." SAC, Ex. C 29; *see* SAC ¶¶ 36, 38.

- For all CPT codes as to the right-knee surgery, Empire stated that "[t]he services remain denied because they are considered not medically necessary." SAC, Ex. C 31; *see* SAC ¶ 40.

Sinha filed suit in New York state court, and Empire removed the action to federal court. *See* Not. of Removal (Dkt. #1). Sinha then filed an amended complaint, which brought claims for (i) failure to pay plan benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.; (ii) breach of contract; (iii) promissory estoppel; (iv) unjust enrichment; and (v) a violation of New York's "Prompt Pay Law," N.Y. Ins. Law § 3224-a. Am.

Compl. ¶¶ 66–92 (Dkt. #9).  Empire moved to dismiss the amended complaint.  *See* Mot. to Dismiss (Dkt. #13).

In March 2022, this Court granted Empire's motion to dismiss.  *See* Mem. & Order (Dkt. #26).  Sinha's ERISA claim failed because "the complaint does not reference any plan provisions at all," and so Sinha had "not adequately pleaded its right to relief under the terms of the plan."  *Id*. at 6 (citation, quotation marks, and brackets omitted).  Meanwhile, Sinha's unjust-enrichment and prompt-pay-law claims failed because they were pre-empted by ERISA, the breach-of-contract claim failed because Sinha did not adequately allege the existence of a contract, and the promissory-estoppel claim failed because Sinha did not allege that Empire made a clear and unambiguous promise to pay Sinha's claims.  *See id*. at 7–13.

Sinha then filed the operative second amended complaint, which includes as an exhibit the Summary Plan Description of J.B.'s health plan.  *See* Summary Plan Description (Dkt. #31-2).  The second amended complaint alleges that Empire violated five sets of provisions in the Summary Plan Description:

(i) a provision titled "How the Medical Program Works," which states that beneficiaries "are covered for expenses [they] incur for most, but not all, medical services" and that beneficiaries are responsible for paying "any amount above the maximum allowed amount Empire pays for a covered service provided out-of-network," SAC ¶¶ 46–47, 64; *see* Summary Plan Description 19;

(ii) a provision titled "Medical Summary of Benefits," which states that surgery is a covered benefit under the Plan, SAC ¶¶ 50–51, 64; *see* Summary Plan Description 30;

(iii) provisions titled "Out-of-Network Deductible and Coinsurance" and "Plan Features," which state Empire will pay 70% of the "maximum allowed amount" for covered out-of-network services, SAC ¶¶ 48–49, 64; *see* Summary Plan Description 20–21;

(iv) a provision titled "Medical Services – What's Covered," which states that "covered services" are listed in the "Medical Summary of Benefits" section, SAC ¶¶ 52, 64; *see* Summary Plan Description 40; and

(v) provisions in the "Glossary," which define "Maximum Amount Allowed" as "[t]he maximum dollar amount of reimbursement for Covered Services" and "Allowed

>  Amount" as "[t]he maximum Empire will pay for a covered service out-of-network. The maximum allowed amount is based on an agreement between Empire and the provider, or if there is no agreement, then the customary charge or the average market charge in your geographic area for a similar service." SAC ¶¶ 53–54, 64; *see* Summary Plan Description 120, 122.

The Summary Plan Description does not identify the customary charge or the average market charge in Sinha's geographic area for services. *See generally* Summary Plan Description.

The second amended complaint asserts six claims, which are labeled as follows: (1) "De Novo Review of the Denial of the Right Knee Surgery," (2) "Abuse of Discretion to Deny the Right Knee Surgery," (3) "De Novo Review of the Inconsistent Findings for the Billing Codes for the Left Knee Surgery," (4) "Abuse of Discretion for Inconsistent Findings for the Billing Codes for the Left Knee Surgery," (5) "Paying Below the In-Network Rate," and (6) "Paying Below the 'Customary Charge.'" SAC ¶¶ 59–93. Each claim asserts that Empire violated the above-mentioned Plan provisions, *see id*. at ¶¶ 64, 72, 76, 79, 85, 92–93, and seeks payment at "the maximum amount allowed by the Plan," *id*. at ¶¶ 69, 72, 77, 80, 86; *accord id*. at ¶ 93. Sinha's fifth claim further seeks payment at the "in-network" rate, *id*. at ¶ 85, and Sinha's sixth claim seeks payment at the "customary charge or the average market charge in [Sinha's] geographic area," *id*. at ¶ 93.

Empire moves to dismiss the second amended complaint for failure to state a claim. *See* Mem. in Supp. of Mot. to Dismiss (Dkt. #38). Empire first argues that Sinha's "non-existent causes of action" are pre-empted by ERISA. *Id*. at 7–9. Empire next argues that, to the extent Sinha's claims are construed as arising under ERISA, the claims should be dismissed because Sinha "fails to cite to a single Plan provision entitling it to relief." *Id*. at 3; *see id*. at 10–13.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint based on "failure to state a claim upon which relief can be granted." To avoid dismissal

5

on that basis, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing Fed. R. Civ. P. 8). The facial "plausibility standard is not akin to a 'probability requirement.'" *Ibid*. (quoting *Twombly*, 550 U.S. at 556). But it requires a plaintiff to allege sufficient facts to enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid*. In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept all facts alleged in the complaint as true. *Ibid*. But it need not adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Ibid*.

## DISCUSSION

The motion to dismiss is granted in part and denied in part. Sinha's fifth claim is dismissed because Sinha has not identified a Plan provision requiring payment at the in-network rate, but Sinha's remaining claims may proceed.

As a threshold matter, the Court construes Sinha's claims as arising under ERISA Section 502(a)(1)(B), codified as amended at 29 U.S.C. § 1132(a)(1)(B), which permits a beneficiary "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B); *see Aetna Health Inc. v. Davila*, 542 U.S. 200, 206 (2004) (stating that Section 502(a)(1)(B) "provides a cause of action for the recovery of wrongfully denied benefits"). The complaint does not directly state the statutory basis for each of the "cause[s] of action," but it asserts that "Sinha . . . may bring an action for payment of benefits under 29 U.S.C. § 1132(a)(1)(B) as a plan beneficiary." SAC ¶ 57 (capitalization altered). There is no ambiguity that Sinha's claims arise under ERISA, because each claim alleges that Empire violated the terms of J.B.'s health plan and requests payment "at

6

the maximum amount allowed by the Plan." *Id.* at ¶¶ 64, 69, 72, 76–77, 79–80, 85–86, 92; *accord* SAC ¶ 93; *see id*. at ¶ 85 (further alleging with respect to Sinha's fifth claim that Empire failed to pay the in-network rate). Indeed, Empire itself acknowledges that Sinha appears to be challenging denial of benefits under Section 502(a)(1)(B). *See* Mem. in Supp. of Mot. to Dismiss 9 ("[I]t is clear that the allegations seek to recover benefits under § 502(a)(1)(B)."). Accordingly, Sinha's claims are construed as arising under Section 502(a)(1)(B).

To state a claim under Section 502(a)(1)(B), a plaintiff must plausibly allege that "(1) the plan is covered by ERISA, (2) plaintiff is a participant or beneficiary of the plan, and (3) plaintiff was wrongfully denied [benefits] owed under the plan." *Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir. 2009) (internal citations omitted); *see Guerrero v. FJC Sec. Servs., Inc.*, 423 F. App'x 14, 16 (2d Cir. 2011). There is no dispute that the first two requirement are satisfied. Empire concedes that "[t]he Plan is a health benefit plan covered by ERISA," Mem. in Supp. of Mot. to Dismiss 2, and Sinha's allegations plausibly establish that this action is brought pursuant to a valid assignment of benefits, *see* SAC ¶ 57; Mem. & Order 8–9 (noting that "Sinha has alleged that it received an assignment" of benefits and that the Summary Plan Description does not contain an anti-assignment provision). As to the third requirement, "[a] claim for benefits under ERISA is the assertion of a contractual right," *Knopick v. Metro. Life Ins. Co.*, 457 F. App'x 25, 28 (2d Cir. 2012), and so "[t]o adjudicate such a claim, a court necessarily must identify the 'terms of the plan,'" *Feifer v. Prudential Ins. Co.*, 306 F.3d 1202, 1208 (2d Cir. 2002) (citation omitted). "[S]ummary documents . . . do not themselves constitute the *terms* of the plan for purposes of § 502(a)(1)(B)," *CIGNA Corp. v. Amara*, 563 U.S. 421, 438 (2011), but statements in a summary plan description can substitute for statements in the plan where, as here, the parties "treat[] the language from the summary description as though it came from the plan," *US Airways, Inc. v.*

7

*McCutchen*, 569 U.S. 88, 92 n.1 (2013); *see Northwell Health Inc. v. Lamis*, No. 18-CV-1178, 2019 WL 4688704, at *5 (S.D.N.Y. Sept. 25, 2019) (collecting cases).

The second amended complaint adequately identifies the Summary Plan Description provisions that Empire allegedly violated. *See* pp. 4–5, *supra* (citing SAC ¶¶ 46–48, 50–54, 64). In combination, those provisions establish that surgery is a covered benefit under the Plan, Summary Plan Description 30, 40; that Empire will pay 70% of the "maximum allowed amount" for covered services, *id*. at 20–21; and that the "maximum allowed amount" is defined, as relevant here, as "the customary charge or the average market charge in your geographic area for a similar service," *id*. at 120, 122.

Although the second amended complaint is not a model of clarity, Sinha plausibly alleges that it is entitled to additional reimbursements under those provisions. First, as to coverage, Sinha alleges that surgery is a covered benefit under the Plan and that Sinha performed surgery on both of J.B.'s knees. *See* SAC ¶¶ 8, 10, 50. Empire apparently agreed that the left-knee surgery was at least partially covered under the Plan, because it reimbursed Sinha for the surgeon as to CPT code 29811 and for the physician's assistant as to CPT code 29999. *See id*. at ¶¶ 9, 24–25. And while Empire's explanation for denying Sinha's claims included reasons such as, "[w]e do not have sufficient information to determine the clinical appropriateness of the assistant surgeon services reported on this claim and are therefore denying the services," SAC, Ex. C 29, and "the procedure is not eligible for separate reimbursement when billed with the procedure and diagnosis indicated," *id.* at 25, Empire does not rely on these grounds in its motion to dismiss, *see generally* Mem. in Supp. of Mot. to Dismiss. Instead, Empire contends only that "Plaintiff has yet to establish . . . whether Plaintiff's surgeries were medically necessary." Reply in Supp. of Mot. to Dismiss 5 (Dkt. #5); *see* Summary Plan Description 19 (stating that a medical service is not covered if it is

8

"[n]ot determined to be medically necessary"). But this argument fails because Sinha alleges that its examination of J.B.'s knees showed that "all of the[] conditions" required for the surgeries to be medically necessary "were met" and that Sinha provided these findings to Empire. SAC ¶¶ 30, 41. Accordingly, Sinha has plausibly alleged that the surgeries on J.B.'s knees were covered under the Plan's terms.

Next, as to the amount of the reimbursements, Sinha plausibly alleges—except with respect to its fifth claim—that it was under-reimbursed according to the terms of the Plan. The Summary Plan Description states, as relevant here, that "Empire will pay for a covered service out-of-network . . . the customary charge or the average market charge in your geographic area for a similar service." Summary Plan Description 122. Sinha alleges that Empire violated this provision by partially reimbursing $575.48 for the surgeon, $737.16 for the physician's assistant, and nothing as to Sinha's remaining expenses. SAC ¶¶ 24–25, 93. Although Sinha does not identify "the customary charge or the average market charge in [its] geographic area," Summary Plan Description 122, Sinha plausibly alleges that Empire paid below these rates because Empire paid more for the physician's assistant than for the surgeon.[*] *See* SAC ¶¶ 83–84; *cf. McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 466 (D.N.J. 2008) ("[A] procedure performed by a highly skilled physician is likely to be more expensive than one performed by a physician's assistant."). Indeed, Sinha alleges that in no-fault cases, the charge for a physician's assistant is 10.7% the rate charged for a surgeon performing the same service. SAC ¶ 11. And of course, as to the denied charges,

---

[*] In opposing Empire's motion to dismiss, Sinha also submitted an attorney affidavit stating that "the 'information and belief' of Empire paying below . . . 'the customary charge or the average market charge in your geographic area for a similar service,' also includes 1) the exceedingly low payment for CPT code 29881; and 2) Empire paying more for a secondary procedure than for the primary procedure." Decl. of Jonathan B. Seplowe ¶ 16 (Dkt. #42). However, the Court disregards this allegation because it is not included in the complaint. *See Williams v. Rosenblatt Secs. Inc.*, 136 F. Supp. 3d 593, 609 (S.D.N.Y. 2015) ("A plaintiff cannot amend his complaint in [a] response to a motion to dismiss."); *Mathie v. Goord*, 267 F. App'x 13, 14 (2d Cir. 2008).

9

Empire necessarily paid below the customary charge or average market rate by paying nothing. Accordingly, Sinha plausibly alleges that it was denied benefits owed under the Plan.

Empire's counterargument appears to be based on a misreading of the second amended complaint. Specifically, Empire contends that "nothing in the Plan documents' pertinent sections mandate that the Plan pay 100% of whatever charges Plaintiff submits as an out-of-network benefit for the Patient's services." Mem. in Supp. of Mot. to Dismiss 12; *see id*. at 11 (collecting cases holding that a plaintiff is not entitled to 100% reimbursement where the plan does not guarantee 100% reimbursement); *see also ibid.* (noting that the Plan requires beneficiaries to pay "any amount above the maximum allowed amount Empire pays for a covered service provided out-of-network") (quoting Summary Plan Description 19). This argument fails because Sinha does not seek 100% reimbursement for its claims. Instead, Sinha requests reimbursement "at the maximum amount allowed by the Plan." SAC ¶¶ 69, 72, 77, 80, 86; *accord id.* at 93. Empire's argument is thus unpersuasive. *See Long Island Neurological Assocs., P.C. v. Empire Blue Cross Blue Shield*, No. 18-CV-3963 (JMA) (AYS), 2020 WL 1452521, at *5–7 (E.D.N.Y. Mar. 2, 2020) (dismissing under similar circumstances a claim for full payment but declining to dismiss a "claim that the reimbursement received was not in accord with the allowable charges under the terms of the Plan"), *report and recommendation adopted*, 2020 WL 1452465 (E.D.N.Y. Mar. 25, 2020).

However, Sinha's fifth claim is dismissed. This claim alleges that Empire violated the Plan's terms by "failing to pay at the 'in-network' rate," SAC ¶ 85, but Sinha identifies no Plan provision requiring Empire to pay the in-network rate. Instead, Sinha relies on the same provisions discussed above, which require Empire to pay "the customary charge or the average market charge in [Sinha's] geographic area." *Id*. at ¶¶ 53, 64, 85. Because Sinha has "fail[ed] 'to identify any provision in the plan documents requiring [Empire] to pay" the in-network rate, *Long Island*

10

*Neurological Assocs.*, 2020 WL 1452521, at *5 (quoting *Pro. Orthopaedic, PA v. 1199 SEIU Nat'l Ben. Fund*, 697 F. App'x 39, 41 (2d Cir. 2017)), it has not adequately pleaded its right to relief "under the terms of [the] plan," 29 U.S.C. § 1132(a)(1)(B).

## CONCLUSION

The motion to dismiss is granted in part and denied in part. Sinha's fifth claim is dismissed because Sinha has not identified a Plan provision requiring payment at the in-network rate, but Sinha's remaining claims may proceed.

SO ORDERED.

                                            /s/ Rachel Kovner
                                            RACHEL P. KOVNER
                                            United States District Judge

Dated:       September 12, 2023
              Brooklyn, New York